UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE KELLY, *et al.*,                              Case No. 11-14298

               Plaintiffs,                         Paul D. Borman
v.                                                   United States District Judge

MAURA CORRIGAN,                                      Michael Hluchaniuk
                                                     United States Magistrate Judge

               Defendant.
_____/

**REPORT AND RECOMMENDATION:**
**PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS (Dkt. 25)**

## I.     PROCEDURAL HISTORY

Plaintiffs filed the present complaint on September 30, 2011.  (Dkt. 1).  The

complaint alleged a due process violation of the United States Constitution

regarding the adequacy of the pre-termination notices sent prior to termination of

cash assistance benefits under the Family Independence Program (FIP) and a state

law violation regarding the imposition of a time limit for receipt of FIP benefits.

The relief sought included a determination that the denial of benefits was not

preceded by meaningful notice, a determination that the denial of FIP benefits to

recipients who have not exceeded 48 months of benefits violated state law and a

request for injunctive relief preventing the termination of benefits until a proper

notice was given.  Plaintiffs also filed a motion for a temporary restraining order

on the same day the complaint was filed.  (Dkt. 3).

A hearing on the motion for a temporary restraining order took place on October 4, 2011, and an order was entered the same day certifying the class and appointing plaintiffs' counsel as class counsel with respect to the federal claim only, granting the motion for a temporary restraining order as to the federal claim based on a determination that the constitutional notice "requirements were not met, or even close-to [being] met," ordering a new notice be sent before termination of benefits, and declining to exercise supplemental jurisdiction over the state law claim in the complaint.  (Dkt. 12, Pg ID 366-68).

Defendant subsequently sent out new notices of benefit termination and plaintiffs objected to the new notices.  (Dkt. 17).  A telephone conference was held on plaintiffs' objections to the new notice on October 14, 2011, and an order was entered that day denying the requested relief and dismissing the complaint based on a finding that the new notices of benefit termination met constitutional requirements.  (Dkt. 21, 22).  Plaintiffs now seek an award of attorney fees and costs, which defendant has opposed.  (Dkt. 25).  Defendant filed her response on December 9, 2011.  (Dkt. 29).  Plaintiffs filed a reply on December 22, 2011. (Dkt. 31).  This matter was referring to the undersigned for report and recommendation by District Judge Paul D. Borman.  (Dkt. 27).  A hearing was held, pursuant to notice, on May 4, 2012, after which the Court took this matter

Report and Recommendation
Motion for Attorney Fees
*Kelly v. Corrigan*; Case No. 11-14298

under advisement.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiffs' motion for attorney fees be **GRANTED** in part, and that fees and costs in the amount of $30,211.27 be **AWARDED** to plaintiff.

## II.   ANALYSIS AND CONCLUSIONS

### A.   Plaintiffs are Prevailing Parties Under Applicable Standards for Awarding Attorney Fees.

Section 1988 of Title 42, United States Code, provides that a "prevailing party" on a claim under 42 U.S.C. § 1983, as well as certain other sections of Title 42, is entitled to an award of a "reasonable attorney's fee." "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances [and] a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citation omitted).

Plaintiffs maintain they are prevailing parties in this matter because they were able to obtain injunctive relief, admittedly a preliminary injunction, which resulted in defendant having to issue new, constitutionally adequate notices of termination of FIP benefits and also prevented the termination of benefits until the new notices were issued to recipients of those benefits.  (Dkt. 25, Pg ID 534-35). Plaintiffs contend, citing *McQueary v. Conway*, 614 F.3d 591, 597-99 (6th Cir.

Report and Recommendation
Motion for Attorney Fees
*Kelly v. Corrigan*; Case No. 11-14298

2010), that when a party in a civil rights case obtains a court-ordered, enduring and irrevocable, material change in the legal relationship between the parties that directly benefits the moving party, that party is a prevailing party within the meaning of § 1988. Plaintiffs maintain they achieved such a goal in this litigation.

Defendant argues that "merely" obtaining a preliminary injunction may not be sufficient to qualify as a prevailing party because "the Court did not order DHS to provide the level of individualized detail" that plaintiffs had sought and therefore the preliminary injunction was only a "fleeting success." Additionally, defendant argues that plaintiffs obtained only part of what they asked for on the federal claim and that the court denied relief on the state law claim, which did not result in a material change in the relationship between the parties. (Dkt. 29, Pg ID 597-98).

Both parties cite *McQueary* in support of their positions on the prevailing party issue. *McQueary* has a number of interesting similarities to the present case. The plaintiff in *McQueary* had intended on protesting military funerals for reasons that are not relevant to this analysis. The plaintiff's intentions were thwarted by a state law which limited such protests and plaintiff challenged the law based on free-speech rights under the First and Fourteenth Amendments. The district court entered a preliminary injunction that prohibited defendant from enforcing the law in question after which the state legislature repealed the law. After the law was

repealed the court dismissed the lawsuit as moot.

The Court of Appeals overturned the district court's denial of plaintiff's request for attorney fees under § 1988, ruling that merely because plaintiff's benefit came in the form of a preliminary injunction was not a disqualifying factor to the application, that plaintiff did not have to prevail on all of his claims or even on the primary relief he sought, and that plaintiff did not have to prevail on the theory he had contended in support of his argument as long as the relief obtained was at least as significant as what had been sought.  The fact that plaintiff did obtain relief that benefitted others was also a factor in awarding attorney fees under § 1988.  *McQueary*, 614 F.3d at 603-04.

Defendant here contends that plaintiffs are not prevailing parties because no material change in the relationship between the parties was effected by this litigation.  In support of that argument, defendant argues that *McQueary* stands for the proposition that merely obtaining a preliminary injunction does not always make the successful party a prevailing party.  Additionally, defendant contends that plaintiffs did not obtain a favorable ruling on their argument that the defendant exceeded her authority in terminating FIP benefits based on the federal 60 month limit, that the revised notice of termination ordered by the court did not include everything plaintiffs had asked for,  and that plaintiffs were "denied" relief on their state claim in Count II of the complaint.  (Dkt. 29, Pg ID 596-97).

Defendant points to *Jones v. Mich. Dep't of Corr.*, 2011 WL 3268087 (E.D. Mich. 2011) as a post-*McQueary* case supporting defendant's position. *Jones* involved a prisoner suing the Michigan Department of Corrections (MDOC) because the MDOC had confiscated certain UCC documents he had in his possession pursuant to a rule. The district court issued a preliminary injunction that enjoined the MDOC from enforcing the specific rule and later the MDOC voluntarily rescinded the rule. The case was appealed to the Sixth Circuit where the decision to enjoin the MDOC from enforcing the rule was affirmed but error was found with respect to the district court's application of a heightened standard of review of the MDOC rule. The Sixth Circuit found that the challenged rule "was necessary to further the prison officials' 'undoubtedly legitimate interest in preventing'" fraud and that other MDOC rules also would have allowed them to confiscate the UCC materials in light of the fact the materials were found to be intended to perpetuate a fraud. Following remand, the district court granted summary judgment in favor of defendant and concluded the challenged rule, with the modifications that had voluntarily been made by defendant, no longer posed a problem for plaintiff and therefore plaintiff's request for relief was moot. The plaintiff asked for attorney fees and costs and the district court denied the request finding that plaintiff was not a prevailing party because (1) while he achieved one of his goals (preventing the rule being enforced against him) he did not prevail on

other injunctive requests, claims for money damages and claims for declaratory

relief, (2) he did not directly benefit from the ruling of the court on the preliminary

injunction in light of the fact the MDOC was able to confiscate his UCC

documents based on other rules, and (3) there was no material change in the

relationship between plaintiff and the MDOC.  Additionally, the MDOC had

"voluntarily" rescinded their rule, rather than having been ordered to rescind it.

The undersigned concludes that plaintiffs in the present case are "prevailing

parties."  While it is accurate to say that plaintiffs did not succeed in obtaining all

the relief they asked for, they obtained relief on significant issues and that is

satisfactory.  Succeeding "on any significant issue in litigation which achieves

some of the benefit the parties sought in bringing the suit" is sufficient to be

considered a "prevailing party" for § 1988 attorney fee purposes.  *Hensley*, 461

U.S. at 433.  Following the filing of the complaint, Judge Borman entered a

preliminary injunction that prevented defendant from terminating FIP benefits

based on the notice given to the plaintiffs and other class members prior to the start

of the litigation.  Judge Borman found that the notice previously given "failed to

provide the FIP Benefit recipients with 'a detailed statement of the intended action,

the reason for the change in status, citation to the specific statutory section

requiring reduction or termination, and specific notice of the recipient's right to

appeal.'"  (Dkt. 12, Pg ID 367).  The other relief granted to plaintiffs by Judge

Borman included: (1) certification of a class and appointment of plaintiffs' counsel as class counsel; and (2) the requirement of a new notice of termination which would conform to the constitutional standards identified and which, presumably, would prevent the termination of benefits before the new notice was given.  Judge Borman also declined to exercise supplemental jurisdiction over plaintiffs' state law claim in Count II.  (Dkt. 12, Pg ID 367-68).

In order to be a prevailing party plaintiffs must obtain a court-ordered benefit that is enduring and irrevocable.  *McQueary*, 614 F.3d at 597.  A benefit, for prevailing party purposes, is usually measured by "the plaintiff's gain based on the relief requested in his complaint, not based on the practical significance of the relief obtained.  *McQueary*, 914 F.3d at 602.  In the complaint plaintiffs requested: (1) certification as a class, (2) a declaration that defendant's past notice was in violation of constitutional requirements, (3) a declaration that termination of benefits to recipients who have not exceeded 48 months is in violation of state law, (4) an injunction preventing defendant from terminating the benefits until adequate notice is given, and (5) an injunction preventing recipients from being terminated before receiving 48 months of benefits, pursuant to a state requirement.  By the court's order, plaintiffs obtained the class certification, the declaration that the prior notice was constitutionally deficient and the injunction that, effectively, prevented the termination of benefits until a modified notice was given.  These

Report and Recommendation
Motion for Attorney Fees
*Kelly v. Corrigan*; Case No. 11-14298

successes are a clear benefit to plaintiffs and the other class members that are enduring and irrevocable. Counsel for defendant conceded, reasonably, at the hearing that the notice requirements imposed by Judge Borman would be included in future notices of a similar kind which reinforces the notion that the modifications are enduring and irrevocable and materially changed the relationship between the class members and defendant.

Defendant is correct in asserting that *McQueary* says just because a party obtains a preliminary injunction that does not mean that party has achieved prevailing party status. However, plaintiffs in the present case, like the plaintiff in *McQueary*, obtained substantial relief on their constitutional claim even if they did not get everything they asked for. In that plaintiffs were certified to represent a class, the relief obtained benefitted others and presumably defendant will employ the modified notice in future termination cases which indicates the relief obtained by plaintiffs will be of an enduring nature. The state claims by plaintiff were not denied on the merits by Judge Borman. Rather, Judge Borman declined to exercise supplemental jurisdiction over those claims. While it is accurate to say that plaintiffs did not obtain relief in this court on those state claims, it is not accurate to say the claims were denied on the merits. The failure to obtain a benefit from the litigation is indeed a factor in the prevailing party analysis but, as noted earlier, a party need not obtain relief on all of their claims to be considered a prevailing

party.

*Jones* is distinguishable from the present case in that the plaintiff in *Jones* had not achieved anything of an enduring nature when the litigation concluded. The rule he challenged was rescinded voluntarily by the MDOC and other rules of the MDOC could have resulted in the same loss of property that plaintiff had complained about.  In contrast, here, the plaintiffs obtained court-ordered relief regarding a substantial portion of what they had asked for in the complaint.

B.   Amount of Attorney Fees

Plaintiffs seek attorney fees and costs in the amount of $31,621.27 for the legal services provided in the prosecution of this case, plus the costs associated with the "time spent resolving the matter of fees and costs."  Besides objecting to the award of fees based on the position that plaintiffs were not "prevailing parties," defendant objects to the amount of fees claimed by plaintiffs contending that the claim is unreasonable and excessive in certain instances.

One objection raised by defendant is for any attorney fees for services expended prior to the notice of termination being sent out.  Defendant argues that certain early legal services performed – those done prior to the challenged notice of termination which was sent on September 11, 2011 – "could not be billed to a paying client" and, therefore, should not be allowed.  In support of this argument defendant cites *Perdue v. Kenny A.*, — U.S. —; 130 S.Ct. 1662, 1672 (2010) for

the principle that the fee awarded under § 1988 should produce "an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." (Dkt. 29, Pg ID 599). Plaintiff responds to this objection by arguing that time spent that is "ordinarily necessary ... to advance the ... litigation" may be included in the attorney fee calculation and that time spent prior to September 11, 2011, was necessary to advance the litigation because it involved "investigation and research" regarding defendant's policies and practices in relevant areas. Plaintiffs argue that the work needed to be done before filing the lawsuit regardless of when the notices were sent. (Dkt. 31, Pg ID 612-13).

It is not entirely clear that the Supreme Court in *Perdue* was establishing a clear parallel between a "paying client" situation and a prevailing party in a civil rights lawsuit, but the undersigned takes some guidance from the language pointed out by defendant. What is clear is that *Perdue* was an attempt to put some objective limits on attorney fee awards under § 1988 while making sure that the award of reasonable fees under this section is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." 130 S.Ct. at 1672. Applying a "paying client" standard in this context seems to suggest that any reasonable legal services provided to a theoretical paying client could be included in the attorney fee award under § 1988. Services relating to

"investigation and research" could certainly be reasonable prior to the initiation of litigation and, one might argue, would be expected of responsible lawyers who attempt to make sure the litigation position is on firm ground prior to the litigation. However, investigation and research, or for that matter any work, done before the existence of a "paying client" should not reasonably be included in an award under § 1988. Attorneys like those representing plaintiffs in the present case who devote their professional lives to providing "civil legal services on legal matters that impact a significant number of indigent clients" are to be commended for their efforts, but doing investigation and research on a potential legal issue, unrelated to the interests of a specific client or group of clients, is not compensable under § 1988 because it is not the kind of work that could be billed to a "paying client." A "paying client" probably would not be happy with an attorney who handed the client a bill, at their first meeting, for services undertaken researching an issue, similar to the client's issue, before the retainer agreement was signed. It may well be that attorneys, like those representing plaintiffs in this case, identify issues they intend on challenging before they find a client, but the time spent prior to finding a client is not compensable under § 1988. However, contrary to defendant's argument in this regard, the critical date is not the sending of the challenged termination notice, but is the date that any of the plaintiffs agreed to be represented by counsel. A review of the billing statements submitted by plaintiffs as

attachments to the present motion indicates the first clear reference to a "client" is on August 29, 2011.  (Dkt. 25-2, Pg ID 547) ("PC w/ Dygas").   The subject matter of the work done prior to agreeing to represent an actual client may be relevant to the litigation ultimately initiated but, relying on the "paying client" factor from *Perdue*, it is not something that should be included in the attorney fee award under § 1988.  In her Supplemental Declaration, Ms. Doig confirms that some of the work done on this case was in advance of servicing an actual client.  (Dkt. 31-2, Pg ID 617).  Only Ms. Doig performed services prior to August 29, 2011, and the total of those services is 4.2 hours.

Defendant also objects to any fees for time spent relating to the state claim in the complaint, which was not considered by Judge Borman.  Specifically, defendant objects to time spent on the "time limits" issue, which appears to be related to the state claim and not to the due process claim.  Plaintiffs do not respond to this particular objection in their reply except to say that the hours included in the motion reflected "only the due process notice and hearing issues." (Dkt. 31, Pg ID 613).   "[W]ork on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved' ... and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley* 461 U.S. at 435.  The only entry on the billing statements on or after August 29, 2011, that relates to "time limits" appears on Ms. Doig's billing records for September 12,

2011.  In the absence of any explanation from plaintiffs as to this entry it is assumed it relates to an "unsuccessful claim" and will not be included in this award.  The amount of time attributed to that entry is .5 hours.

Defendant further objects to some of the time claimed by plaintiffs' attorneys based on various other reasons.  With respect to Ms. Doig, defendant argues, apparently, that some of the time spent was not necessary and that some was excessive.  Additionally, defendant appears to object to Ms. Doig being compensated for time spent on the fee petition.  (Dkt. 29, Pg ID 600).  Plaintiffs respond by stating the minimal time spent creating a table of legal issues and the time spent creating a screening tool were directly related to identifying issues in the litigation and to establishing a procedure for screening potential clients.  (Dkt. 31, Pg ID 613).  Both of these goals seem reasonable and appropriate.  Identifying legal issues is always relevant to litigation and screening clients in a class action case would appear to be a necessary aspect of that type of case.  Defendant's claim that the 8.25 hours Ms. Doig "spent finalizing the injunction motion" was excessive.  It is not clear exactly how defendant determined that this time was excessive.[1]  Plaintiffs argue that the time spent was reasonable and necessary and

_____

[1] At one point defendant argued that the due process issues were "old hat," which implies that addressing the issues should not have taken as much time as claimed.  Fundamental principles of due process may be well established but the application of those principles to a set of facts is the challenging aspect of cases of this nature.  If the due process issues were so clear cut here one wonders why

Report and Recommendation
Motion for Attorney Fees
*Kelly v. Corrigan*; Case No. 11-14298

of great importance to the 11,000 families impacted by this matter.  While it is clear that a court should not include hours that are "excessive, redundant, or otherwise unnecessary," it is difficult to measure such things in this context. Admittedly, a certain degree of deference must be given to attorneys who submit billing statements because it would be impossible to examine each and every transaction and conclude that the number of hours listed as being expended is out of proportion to the work performed.  There is no mathematical equation that determines how many hours it takes to research and write a five-page brief and the reasonable efforts of one lawyer cannot easily be compared to those of another. Defendant's suggestion that the time expended in preparing the motion for the TRO seemed inordinately long for the end result is not supported by anything except for defendant's subjective assertion. Such personal observation is not persuasive and does not overcome the deference that should be given to an attorney who has submitted a statement to the court, along with a sworn declaration, claiming to have put in the number of hours listed in the billing statement.  The review undertaken by the undersigned does not suggest anything grossly out of line with the work described in the statement and, therefore, the amount of hours identified is found to be "reasonable."  This is certainly not a situation where a "manifest excessiveness" in the time claimed to have been spent on some legal

---

defendant did not merely consent to reissue the notices as requested by plaintiffs.

matter is obvious.  *Louisville Black Police Officers Organization v City of Louisville*, 700 F.2d 268, 279 (6th Cir. 1983).

Defendant objects to Ms. Doig and Ms. Stangl including time spent on the fee petition in plaintiffs' claim for attorney fees under § 1988.  Defendant cites no authority for the proposition that such a claim is not compensable.  Plaintiffs respond to the objection by pointing out that the time spent included compiling records, attempting to negotiate a settlement on the issue, preparing documents and providing notice to the class.  Neither the fact that time is claimed for these services nor the amount of time spent in this regard seem unreasonable to the undersigned.

Defendant's objection to the hours claimed by Ms. Stangl is based almost entirely on the position that any work performed before the challenged notice of termination was issued is not proper.  For the reasons stated earlier, work performed prior to August 29, 2011, is not compensable but Ms. Stangl has not made a claim for any legal services performed prior to that date.

The objection to the claim submitted by Ms. Lincoln is based on the argument that she attended a court hearing on October 4, 2011, along with Ms. Doig, and defendant questions whether it was necessary for Ms. Lincoln to be there when Ms. Doig made the argument.  Plaintiffs' respond to this objection by stating that Ms. Lincoln had experience in this area before and that she "offered

16

suggestions" to Ms. Doig at the time of the hearing and that the suggestions
"helped" Ms. Doig.  (Dkt. 31, Pg ID 614).  Ms. Lincoln submitted a Supplemental
Declaration in which she asserts that she had prior experience in due process cases
and during the October 4, 2011 hearing she provided Ms. Doig with written
messages, which Ms. Doig referred to during her arguments.  (Dkt. 31-3, Pg ID
620).  The undersigned finds that the presence of two attorneys at the same hearing
is not, *per se*, unreasonable.  A single occasion of two attorneys appearing at the
same hearing does not suggest a practice of double billing merely for the purpose
of increasing the billable hours.  Plaintiffs have articulated a justification for Ms.
Lincoln being present that is rational.  It may or may not be more efficient and
cheaper to have a single attorney appear at a hearing or deposition, but it is not
"unreasonable" for two attorneys to function in that fashion on occasion.

The remaining significant objection to plaintiffs' attorney fee petition is the
hourly rate sought by plaintiffs' counsel.  The "lodestar" method of calculating an
attorney fee award is the "guiding light" for federal "fee-shifting jurisprudence."
*Perdue*, 130 S.Ct. at 1672.  The lodestar method involves calculating a reasonable
fee and multiplying that fee by the number of hours reasonably expended on the
litigation.  "[A] 'reasonable fee' is a fee that is sufficient to induce a capable
attorney to undertake the representation of a meritorious civil rights case."  *Id*.  "A
district court has broad discretion to determine what constitutes a reasonable

Report and Recommendation
Motion for Attorney Fees
*Kelly v. Corrigan*; Case No. 11-14298

hourly rate for an attorney." *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). "'[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v Stenson*, 465 U.S. 886, 895 (1984).

In order to determine a reasonable hourly rate for the legal work at issue here plaintiffs suggest considering the factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). (Dkt. 25, Pg ID 535-36). While a number of cases have relied on those standards, and defendant here does not contend that other standards should apply, the Supreme Court has not entirely endorsed those standards as the basis for a reasonable hourly rate determination. In *Hensley*, the Court noted that "many of [the *Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." 461 U.S. at 434, n. 9. The analysis in *Hensley* was later described as a "hybrid approach that shared elements of both *Johnson* and the lodestar method of calculation." *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 563-64 (1986). *Blum* established that the lodestar amount (hours reasonably expended times a reasonable hourly rate) was presumed to be a reasonable fee and that adjustments from that amount were limited and only permissible in rare and exceptional circumstances. 478 U.S. at 565. *Perdue* confirmed that the

Report and Recommendation
Motion for Attorney Fees
*Kelly v. Corrigan*; Case No. 11-14298

presumption that the lodestar amount is a reasonable attorney fee is a "strong" one and that adjustments from that amount are not to be made based on factors that are subsumed in the lodestar calculation. 130 U.S. at 1672-73.  This "presumption may be overcome in those rare circumstances in which the lodestar calculation does not adequately take into account a factor that may properly be considered in determining a reasonable fee.  *Id*. at 1673.  "[U]nlike the *Johnson* approach, the lodestar calculation is 'objective,' ... and thus cabins the discretion of trial judges, permits meaningful review, and produces reasonably predictable results."  *Id*. at 1672.  The message from the Supreme Court in these cases, including the admonition that a "request for attorney's fees should not result in a second major litigation," *Hensley*, 461 U.S. at 437, signals the need to simplify the analysis in attorney fee petitions under § 1988 and apply the lodestar methodology absent some unusual circumstances.  For these reasons the undersigned declines to apply the *Johnson* factors to this analysis.

The only significant evidence of market rates for attorney services in this record is the information from the State Bar of Michigan based on a survey done in 2010.  Defendant does not challenge the authenticity of that information, but contends that the rates for Wayne County should not apply here because plaintiffs' attorneys are based in Saginaw and plaintiffs reside in northern Michigan. Defendant acknowledges that the litigation took place in Detroit, but claims that it

was "disingenuous" of plaintiffs' counsel to file the case in Detroit without explaining why such conduct should be viewed as being "disingenuous."[2]  (Dkt. 29, Pg ID 602).  Plaintiffs respond to that implication by pointing out that two of the three original plaintiffs reside in the Southern Division of this district and that, even if state-wide market rates were used for this purpose, the requested amounts are still "reasonable."  The undersigned concludes that the "relevant community" for purposes of determining the lodestar amount is Wayne County, where the judge primarily responsible for this case is located and where the hearings in this matter took place.  Using the forum court to establish the "relevant community" is a more objective and predictable way of establishing the lodestar amount and eliminates confusion and inequality that might be associated with situations in which prevailing parties are represented by attorneys from different locations.  *See Louisville Black Police Officers*, 700 F.2d at 277-78 (appropriate to award fees based on market rates where trial took place rather than New York where attorneys were based).

Ms. Doig has been a practicing attorney for approximately 30 years and has worked in legal services programs and public interest positions almost her entire

---

[2]  Filing the case in the Southern Division could have resulted in the case being assigned to a district judge in Detroit, Ann Arbor, Port Huron or Flint. Plaintiffs' counsel could not control to which of these locations in the Southern Division the case was assigned.

career.  She has a significant list of cases where she has participated at some level in the litigation and has attended numerous training programs that focused on public interest subjects.  Ms. Stangl has also been a practicing attorney for approximately 30 years, also has a significant list of cases where she has participated in the litigation and has also attended or made presentations at a number of programs involving public interest issues.  These attorneys both seek an attorney fee award based on an hourly rate of $300 per hour.  In support of that request, they rely on State Bar of Michigan survey results which demonstrate that the mean (average) hourly rate for attorneys who primarily practice in Wayne County in the area of civil rights is $292 and the 75th percentile hourly rate is $375.  (Dkt. 25-5, Pg ID 563).  These same rates based on years of practice show $286 and $375, respectively, for 16-25 years of experience.[3]  (Dkt. 25-5, Pg ID 566).  The state-wide rates for civil rights practitioners are $255 (mean) and $325 (75th percentile).  (Dkt. 31-4, Pg ID 621).

Defendant does not argue that these figures do not evidence market rates, but objects to the $300 an hour rate based on the fact that these lawyers were awarded, based on the agreement of the parties, that rate in another case, which was more complicated than the present litigation. (Dkt. 29, Pg ID 601).  Anecdotal evidence

---

[3]  This is the only category of experience that has a significant number of participants which makes the other figures not sufficiently reliable to base estimates on.

of awards in other cases is some indication of market rates, but it is not as persuasive as the survey results published by the State Bar of Michigan. Defendant's description of the other case does not clearly demonstrate that it is so significantly more complicated that the work performed by plaintiffs' counsel here should be discounted below that of the other case. Additionally, "the novelty and complexity of a case generally may not be used as a ground for enhancement because these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'" *Perdue*, 130 S.Ct. at 1673.

Ms. Lincoln has been a practicing attorney for over 20 years but, as defendant points out, does not appear to have the depth of experience in civil rights cases that Ms. Doig and Ms. Stangl do. She states that she has worked on more than ten cases involving due process rights and has tried more than 30 cases, which is significant experience generally. (Dkt. 31-3, Pg ID 620). Ms. Lincoln seeks attorney fees in the amount of $275 per hour. Using the same data referred to above, $275 is below the mean/average rate for Wayne County attorneys who practice civil rights law, below the average rate for attorneys with her years of experience and slightly more than the state-wide average for civil rights practitioners. Defendant appears to argue that Ms. Lincoln is not worth approximately 92% of what Ms. Doig and Ms. Stangl are worth based on the differences in their experience level. The undersigned concludes that trying to

make a comparison to co-counsel is not the only, and perhaps not the best, way to establish a reasonable market rate for the services of Ms. Lincoln.  The rate of $275 per hour is a reasonable rate for the services performed by Ms. Lincoln, an attorney with over 20 years of general experience and moderate experience in civil rights cases, in this matter and that decision is primarily informed by the data from the State Bar of Michigan, which is the most persuasive evidence of market rates.

Defendant has not objected to the costs plaintiffs have included in their motion.  Based on the above analysis, Ms. Doig's fee request is reduced from 82.95 hours to 78.25 hours which, at $300 per hour, results in a fee award of $23,475.00.  The other requested amounts remain the same as claimed in the motion.  The total award for fees and costs is $30,211.27.

## III.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiffs' motion for attorney fees be **GRANTED** in part, and that fees and costs in the amount of $30,211.27 be **AWARDED** to plaintiff.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: June 28, 2012                      s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>June 28, 2012</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Jacqueline Doig, Joseph E. Potchen, and William R. Morris</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Motion for Attorney Fees
*Kelly v. Corrigan*; Case No. 11-14298